[No. 18035-5-I.   Division One.   February 1, 1988.]

LOBAK PARTITIONS, INC., *Appellant,* v. ATLAS CONSTRUCTION COMPANY, INC., ET AL, *Respondents.*

---

[6]The record is replete with evidence that Taylor's work record was one of employment for very brief periods.

*Gerald B. Netzky,* for appellant.

*Bryan Coluccio,* for respondent Atlas Construction Co.

*Douglas N. Jewett, City Attorney,* and *Philip King, Assistant,* for respondent Seattle.

*Richard L. Lambe* and *Ulin, Dann, Elston & Lambe,* for respondent Tuffey & O'Malley, Inc.

*William L. Hintze* and *Taylor & Hintze,* for respondent Industrial Indemnity Co.

SCHOLFIELD, C.J.—Lobak Partitions appeals the trial court's dismissal of all of its claims against Atlas Construction, Industrial Indemnity, and the City of Seattle. We reverse in part and affirm in part.

## FACTS

The dispute in this case arose from the construction of the Seattle Center Resident Theater, better known as the Bagley Wright theater. The City, owner of the project, hired Atlas as the general contractor. The contractor's bond posted for the project was provided by Industrial Indemnity.

Atlas subcontracted a portion of the project to Tuffey and O'Malley (T & O). In August 1982, T & O in turn entered into a subcontract with Lobak for drywall work. Lobak was not registered as a contractor pursuant to RCW 18.27[1] at the time it entered into the contract with T & O.

In May 1984, Lobak filed suit against Atlas, the City, Industrial Indemnity, and T & O, alleging breach of contract and also seeking recovery against the contractor's bond. Lobak alleged in its complaint that it was due a balance of approximately $58,000 on the original subcontract, and claimed damages against the bond in the approximate amount of $371,000, due to the defendants' delay, hindrance, delayed payments, costs, fees, loss of efficiency, impact, acceleration, penalties and other damages, and a claim against the retainage in the amount of $93,000.

In the body of the complaint, Lobak alleged two specific causes of action: a claim against the project contractor's bond, for which a proper "notice of claim" was filed, and a claim for breach of contract against T & O with varying (unknown) degrees of liability attributed to the other defendants. In its answer, Atlas alleged as counterclaims that Lobak failed to pay its creditors and failed to complete the work called for, causing Atlas to sustain damages. Counsel for Lobak withdrew in November 1984. Apparently, no counsel was retained by Lobak until December 1985.

On October 25, 1985, a trial date of January 9, 1986, was set for the case. On November 20, 1985, T & O moved for partial summary judgment, seeking an order limiting its liability to Lobak to an amount that would be attributed

---

[1]Former RCW 18.27.020 reads as follows:

"Registration required—Misdemeanor. It is a misdemeanor for any contractor having knowledge of the registration requirements of this chapter to offer to do work, submit a bid, or perform any work as a contractor without being registered as required by this chapter."

and passed on to Atlas. Following a hearing on the issue, the trial court entered an order on December 10, 1985, that T & O's liability to Lobak, if any, was limited to that portion of the claim that would pass through to Atlas, giving T & O judgment over Atlas. Apparently, Lobak did not respond to T & O's motion, nor did it appear at the hearing.

On December 13, 1985, Atlas and Industrial Indemnity filed a motion for judgment on the pleadings, or in the alternative, for summary judgment against Lobak, to dismiss all claims. On December 20, 1985, the City filed a similar motion.

In support of its motion, Atlas argued that it was not liable to Lobak for any contractual obligations arising under the subcontract because there was no contractual privity between itself and Lobak. In addition, Atlas stated in its supporting affidavit that it did not impact Lobak's performance on the project. As noted above, Atlas argued that it was damaged through Lobak's failure to pay creditors and complete work. Atlas also argued that because Lobak was an unregistered contractor, it should not be permitted to bring suit.

The City argued in support of its motion that no privity existed between itself and Lobak and also argued that Lobak's claim against the retainage should be dismissed for lack of prosecution. A hearing on both motions was set for January 3, 1986. On January 2, 1986, Lobak submitted its memorandum in opposition to Atlas' and the City's motions, together with the affidavit of Jeff Baker, vice–president of Lobak. The affidavit stated that Lobak had obtained a renewal bond (certificate of insurance) on February 23, 1982, expiring on December 20, 1982, and thus was in complete compliance with RCW 18.27.040, even though Lobak was not included in the 1982 contractor list.

The trial court dismissed all of Lobak's claims against the City with prejudice and without costs, but refused to consider Lobak's untimely memorandum and affidavit. The trial court also granted Atlas and Industrial Indemnity

summary judgment, dismissing with prejudice all of Lobak's claims against them. The trial court's order further dismissed Lobak's claim against the project retainage.

Lobak's subsequent motions for reconsideration were denied by the trial court, after the trial court reviewed all materials submitted to it, including the untimely memorandum and affidavit. Lobak filed its notice of appeal with this court on March 5, 1986. Although the original notice appeared to contain an appeal on the issue of the retainage fund, it was later conceded by Lobak and determined by the court commissioner that the appeal was not from the portion of the trial court's order dealing with the retainage.

## PRIVITY OF CONTRACT

█ Under ordinary circumstances, a stranger to a contract may not sue. A third party may enforce a contract to which he is not in privity only if the contracting parties intended to secure to him personally the benefits of the provisions of the contract. A contract which only creates a general obligation to pay the costs of performing a particular undertaking does not show an intention to make such contract for the benefit of a third person who may have furnished necessary materials to some project. *See Layrite Concrete Prods. of Kennewick, Inc. v. H. Halverson, Inc.,* 68 Wn.2d 70, 74, 411 P.2d 405 (1966).

Alternatively, a contracting party may assign its right to payment, giving the assignee a direct right of action against the obligor. No party here argues that Lobak received any such assignment. Lobak also cannot be considered an intended beneficiary of the contract between either the City and Atlas or the contract between Atlas and T & O, because no evidence exists that those contracts were made specifically for Lobak's benefit. The City and Atlas are correct that a lack of privity precludes Lobak's direct breach of contract action against them.

█ Lobak argues, however, that its complaint also alleged a tort action. In order to state a claim upon which relief may be granted, it is necessary for the complaint to

contain direct allegations sufficient to give notice to the court and the opponent of the nature of the plaintiff's claim. *Berge v. Gorton,* 88 Wn.2d 756, 567 P.2d 187 (1977). A careful review of Lobak's claim fails to suggest that a negligence action or any other tort action was intended by Lobak. The complaint describes a claim against the bond and a claim for breach of contract. Although it is certainly *possible* that certain of Lobak's claims for delay, hindrance, etc., could be considered to sound in tort, the wording of the complaint does not suggest a tort action.

### CLAIM AGAINST CONTRACTOR'S BOND

However, lack of privity does not preclude Lobak's right to bring an action on Atlas' contractor's bond. As stated in American Jurisprudence:

> Although there is some authority to the contrary, it is generally held that a subcontractor, as well as a laborer or materialman, may recover on a bond executed pursuant to a statute which requires of a public contractor a bond conditioned for the payment of laborers and materialmen, and provides that the bond shall inure to the benefit of such persons, or authorizes them to sue thereon. Moreover, it has been held that a sub–subcontractor . . . may recover on such a bond.

> Under the Miller Act, a subcontractor may recover on the prime contractor's payment bond if he has dealt directly with the prime contractor or if he has dealt directly with another subcontractor and has given the statutory notice of his claim to the prime contractor.

(Footnotes omitted.) 17 Am. Jur. 2d *Contractors' Bonds* § 78 (1964). RCW 39.08.010 requires a general contractor to make, execute and deliver to the appropriate governmental body a sufficient bond to ensure that all laborers, mechanics, subcontractors and materialmen are properly paid. RCW 39.08.030 gives a right of action to such persons to sue on the bond as follows:

> [A]ll such persons mentioned in RCW 39.08.010 shall have a right of action in his, her, or their own name or names on such bond for work done by such laborers or mechanics, and for materials furnished or provisions and

goods supplied and furnished in the prosecution of such work, or the making of such improvements . . .

Because Lobak was a subcontractor on the Bagley Wright theater project, we hold that RCW 39.08.010 gives it a right to sue on the contractor's bond.

CONTRACTORS' REGISTRATION STATUTE

Former RCW 18.27.020 reads in pertinent part:

(1) It shall be unlawful for any person to submit any bid or do any work as a contractor until such person shall have been issued a certificate of registration by the state department of labor and industries. A partnership or joint venture shall be deemed registered if any one of the general partners or venturers whose name appears in the name under which the partnership or venture does business shall be registered. A violation of this section shall be a misdemeanor.

RCW 18.27.080 concerns registration as a prerequisite to suit:

No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract.

Former RCW 18.27.140 states the purpose of the registration chapter as follows:

It is the purpose of this chapter to afford protection to the public from unreliable, fraudulent, financially irresponsible, or incompetent contractors.

RCW 18.27.140 was amended in 1983 to broaden the definition of "public" to read as follows:

It is the purpose of this chapter to afford protection to the public including all persons, firms, and corporations *furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors.*

(Italics ours.)

The Washington Supreme Court addressed the question of registration as a prerequisite to suit in *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971). In that case, a contractor entered into a contract to provide labor, materials, and equipment for a project on the respondent's property. During the course of performance of the work, a dispute arose, and the respondent refused to make the required payments and terminated the contract. The trial court dismissed the contractor's claim because the contractor was not properly registered pursuant to RCW 18.27.

The *Murphy* court noted that the purpose of the judicial function of statutory interpretation is to effectuate the legislative objective, even when that objective is inconsistent with the literal reading of the statute as applied to particular facts. *Murphy*, at 419–20. *See also* J. Sutherland, *Statutory Construction* § 6006 (3d ed. 1943). The *Murphy* court held that RCW 18.27 should be liberally or functionally construed in terms of "substantial compliance" to effectuate the statute's purpose to ensure minimum financial security for consumers who are the customers of building contractors. *Murphy*, at 422. Similarly, in *Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.*, 83 Wn.2d 453, 519 P.2d 1 (1974), the Washington Supreme Court noted that RCW 18.27 was designed to prevent the victimizing of a "defenseless" public. *Northwest Cascade*, at 459–60.

In *Bremmeyer v. Peter Kiewit Sons Co.*, 90 Wn.2d 787, 585 P.2d 1174 (1978), a logging subcontractor brought an action against the prime contractor to recover a portion of the cancellation costs on a highway project. The prime argued that the subcontractor's claim was barred because the subcontractor was an unregistered contractor, contrary to RCW 18.27. The subcontractor argued that he had substantially complied with the statute (bond, insurance certificate), that loggers were exempt from the registration requirement, and that the statute was inapplicable to

actions between subcontractors and prime contractors. The trial court granted summary judgment for the prime contractor.

On appeal, the Washington Supreme Court noted its previous decision in *Jeanneret v. Rees,* 82 Wn.2d 404, 511 P.2d 60 (1973), in which it had held that RCW 18.27 was intended to bar actions by unregistered contractors against prime contractors. However, the *Bremmeyer* court also took note of a 1973 amendment to the statute, which added former RCW 18.27.140, stating that the purpose of the chapter was to protect the public. The *Bremmeyer* court held that, in view of this declared statutory purpose, the Legislature did not intend to protect prime contractors from actions initiated by unregistered subcontractors, overruling *Jeanneret* to the extent it was inconsistent. *Bremmeyer,* at 791–93.

RCW 18.27.140 was amended in 1983 to expand the definition of "public" to potentially include subcontractors and other suppliers as those needing protection. In addition, the Washington Supreme Court reaffirmed its holding in *Bremmeyer* in *Frank v. Fischer,* 108 Wn.2d 468, 739 P.2d 1145 (1987). In *Frank* the court stated again that the purpose of the contractor registration statutes is to protect the public from contractors, not contractors from contractors. *Frank,* at 472.

In the case before us, Atlas argues that *Bremmeyer* is inapposite because Lobak's action on the bond is not an action between contractors. However, Atlas offers no authority or persuasive reasoning for why an action on the bond should be treated differently than an action between contractors, particularly in view of the fact that the contractor is usually the principal on the bond.

Atlas also presents an Alaska Supreme Court case prohibiting unregistered contractors from suing on construction bonds. In *State ex rel. Smith v. Tyonek Timber, Inc.,* 680 P.2d 1148 (Alaska 1984), a concrete subcontractor brought an action against one of its suppliers, the general

contractor and the general contractor's surety for replacement cost of certain materials. The trial court awarded summary judgment to the defendants.

On appeal, the Alaska Supreme Court held *inter alia* that the subcontractor's failure to comply with state contractor registration requirements precluded recovery on all claims against the general and its surety, and held that the public works remedial statute, Alaska Stat. § 36.25.020, giving subcontractors and others a specific right of recovery on the prime contractor's bond, was not independent of the contractor registration requirement. The *Tyonek Timber* court noted that public policy precluded giving the contractor registration statute anything but a literal reading, and that the Legislature's purpose for the statute was to ensure competence and financial responsibility in those who undertake contract work. *Tyonek Timber,* at 1157.

A comparison of *Bremmeyer* and *Tyonek Timber* reveals a fairly clear policy divergence between the Washington Supreme Court and the Alaska Supreme Court and their respective Legislatures. Washington has determined that the purpose of its contractor registration statute is to protect consumers, while Alaska's registration statute seeks to create financial responsibility in general among contractors. Therefore, we decline to accept *Tyonek Timber* as persuasive authority, and hold that a suit was not precluded for Lobak's failure to be a registered contractor at the time it entered into its subcontract with T & O.

In addition, Lobak asserts that it was in substantial compliance with the registration requirements. Compliance with the insurance and surety bond requirements of the contractor registration statute is sufficient to permit a contractor to maintain an action for compensation for work performed. *Leon's Plumbing & Heating, Inc. v. Aqua Drilling,* 26 Wn. App. 789, 614 P.2d 237 (1980).

The affidavit of Jeff Baker, submitted by Lobak and considered by the trial court on Lobak's motion for reconsideration, certainly was sufficient to raise a question of fact concerning Lobak's compliance with the registration

requirements. Thus, based on the inapplicability of the registration requirements, and based on the possibility of substantial compliance with the statute, summary judgment in favor of the defendants based on a question of Lobak's registration alone was improper.

SUMMARY JUDGMENT OR JUDGMENT ON THE PLEADINGS

CR 12(c) reads as follows:

**Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

Washington courts have held that pursuant to CR 12(c), a motion for judgment on the pleadings is to be considered a motion for summary judgment under CR 56 if the trial court considers matters outside the pleadings in making its decision. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976).

CR 56(c) reads in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 503 P.2d 108 (1972). On review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

A party moving for summary judgment must initially show that undisputed facts entitle him to judgment as a

matter of law. Failure to meet this initial burden prevents the entry of a summary judgment, whether or not the non-moving party has submitted affidavits or other materials. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 616 P.2d 1223 (1980).

To rebut a summary judgment motion, the adverse party may not rest on allegations, but must set forth specific facts showing there is a genuine issue for trial or have the summary judgment, if appropriate, entered against them. *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975). *See also* CR 56(e). Because the trial court below considered matters outside of the pleadings, the motions by the City and Atlas must be considered as motions for summary judgment.

Atlas asserts that summary judgment was proper because the lack of privity of contract between itself and Lobak, and the unavailability to Lobak of a claim under RCW 39.08.010 entitled Atlas to summary judgment as a matter of law. However, because we reverse the trial court's dismissal of the bond claim, Lobak is entitled to pursue its claim if it set forth specific facts showing there was a genuine issue for trial on the claim.

Although the trial court rejected Lobak's untimely affidavit in opposition to Atlas' summary judgment motion, the affidavit was later accepted by the trial court as part of Lobak's motion for reconsideration. The affidavit of Jeff Baker dated January 2, 1986 describes the extent of delays in construction allegedly due to design and layout errors by Atlas and Atlas' failure to accomplish on schedule prerequisite work by others. The affidavit also describes generally the areas where Lobak suffered losses due to the claimed delays. Baker's affidavit was sufficient to raise triable issues below.

### ATTORNEY'S FEES

Because we reverse the trial court, we do not address Atlas' request for attorney's fees based on a finding that Lobak's appeal was frivolous.

Therefore, we hold that summary judgment dismissing Lobak's claim against the contractor's bond was improper and reverse. The judgment in all other respects is affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court May 4, 1988.