[No. 16324-5-III.    Division Three.    February 19, 1998.]

GARTH CHATTERTON, ET AL., *Respondents*, v. BUSINESS VALUATION RESEARCH, INC., *Defendant*, A & H PRINTERS, INC., ET AL., *Appellants*.

*Dennis J. Dunphy* of *Schwabe, Williamson, Ferguson & Burdell*; and *Michael T. Shein*, for appellants.

*John S. Moore, Jr.*, of *Velikanje, Moore & Shore, Inc., P.S.*, for respondents.

SWEENEY, J. — This case arises from a dispute over the meaning of the term "value" in a shareholder buyout agreement of a closely held printing business. The majority shareholder agreed to buy out the retiring minority shareholder's interest at a value to be determined by a small business evaluator selected by their attorneys. The buyout agreement also outlined the procedure for valuing the stock: An MAI appraiser would value the tangible assets. A small business evaluator would then determine the value of the total business including the tangible assets. Next the business evaluator would discount the value of the business by a minority discount the evaluator deemed appropriate. The evaluator rejected the valuation of the

business as a going concern. He concluded instead that the fair market value of the business was its liquidation value. He therefore valued the minority shareholder's stock by further discounting the asset value for liquidation costs— capital gains tax, commissions, and other costs of sale.

The question here is whether the buyout agreement precluded discounts for liquidation costs. We conclude that it did and affirm the trial court's judgment for the minority shareholder.

## FACTS

A & H Printers, Inc., is a closely held corporation. Roger and Marilyn Biallas own 162 shares of A & H. Garth and Joan Chatterton own 159 shares. Mr. Biallas and Mr. Chatterton comanaged and worked in the business together from 1970 until ill health forced Mr. Chatterton to retire in 1993. Soon after he resigned, Mr. Chatterton served but did not file a lawsuit charging Mr. Biallas with mismanagement and misappropriation of funds. To avoid a lawsuit, Mr. Biallas agreed to negotiate a buyout agreement.

The essential terms of the agreement are:

(Paragraph 1) A & H agreed to buy and Mr. Chatterton agreed to sell Mr. Chatterton's 159 shares.

(Paragraph 3) First, the tangible assets including real estate and equipment would be appraised by an MAI-qualified appraiser to be chosen by the parties' attorneys. Then, using these appraisals, the books and records of the corporation and any additional information either party wished to present, a small business evaluator, also selected by the attorneys, would establish *a value for the total business and assets of the corporation.*

(Paragraph 4) Based on this "value of the business," the evaluator would establish the *sales price* for Mr. Chatterton's shares of stock *by applying* "a minority discount the evaluator deems appropriate."

(Paragraph 5) Each party agreed that the "net value,

and thus the sales price," of Mr. Chatterton's shares of stock was conclusive and binding upon each of the parties and would "establish irrevocably the sales price of said shares" as between Mr. Chatterton and A & H.

(Paragraph 7) The parties agreed to close the transaction with a modest down payment within 30 days following the establishment of the sales price, the balance to be financed over 10 years at one percent above Seattle First National prime. Mr. Chatterton was to have first security interest in all personal property of the corporation and a first mortgage on the real estate.

(Paragraph 8) Standard integration clause.

In an addendum signed April 1, 1994, Mr. Chatterton agreed not to compete with A & H for five years.

The real estate appraiser set the value of A & H's land and buildings at $445,000. The lawyers selected Paul T. Clausen of Business Valuation Research, Inc., (BVR) to establish the value of the business and the sales price of Mr. Chatterton's interest. Prior to receiving a copy of the agreement, Mr. Clausen wrote a confirming letter that BVR would determine the *fair market value* of a 49 percent stock interest in A & H. Mr. Clausen defined fair market value as "[t]he amount at which [a subject stock interest] would change hands between a willing buyer and willing seller, both being reasonably informed of the relevant facts, and neither acting under compulsion to buy or sell."

On October 24, 1994, BVR submitted its report, valuing the minority interest as of August 31, 1994 at $153,912.

Mr. Clausen used three alternative valuation methods in arriving at his opinion of the value of the business.

1. *Capitalization of Earnings*: First, he estimated the current earnings of the business and capitalized the earnings at an appropriate rate of return. Because of A & H's flat earnings profile and declining gross profit, this method yielded a value of only $170,000, less than the book value of the real estate and tangible assets. Mr. Chatterton rejected this value.

2 and 3. *Adjusted Assets (A) and (B)*: Next, he combined the value of the company's tangible and intangible assets and subtracted the outstanding liabilities. He generated two values:

(A) $789,000 = value as a going concern[1]

(B) $518,000 = estimated liquidation value[2]

Mr. Clausen rejected the going concern value because A & H's nominal profits did not support the assets' value. Mr. Clausen opined that when the value of a business lies primarily in the tangible assets because of weak earnings, a hypothetical rational buyer would not buy the business based on its value as a going concern but only to liquidate it. Therefore, fair market value is the liquidation value.

In reaching the liquidation value, BVR reduced the real estate value by 15 percent and the equipment and other tangibles by 25 percent to account for projected brokerage commissions and other liquidation costs. An additional 5 percent was deducted for capital gains taxes that would be incurred upon liquidation.

Using the $518,000 liquidation value as the fair market value, BVR calculated the value of each share as $1,613.71. The per share value was further reduced by 40 percent to reflect a 15 percent minority discount and a 30 percent lack of marketability discount.[3] The resulting price of $968 per minority share made Mr. Chatterton's 49.5 percent interest worth $153,912.

BVR had a copy of the buyout agreement and knew there was no sale or dissolution anticipated.

Mr. Chatterton sued BVR, the Biallases and A & H for a

---

[1]The glossary supplied with the report defines going concern as: "An operating business enterprise; a business whose earnings capacity is adequate to provide a fair return on an investment in the amount equal to or greater than liquidation value of the enterprise."

[2]Liquidation value is defined as: "The aggregate proceeds which would be realized by the business in an orderly, piece-meal sale of all assets, less all liabilities, applicable taxes, and related liquidation expenses; generally recognized as the lowest possible value of an enterprise."

[3]When the 15 and 30 percent discounts are subtracted sequentially, the total discount rounds out to 40 percent.

declaratory judgment. He alleged that the $789,000 going concern value, not the $518,000 liquidation value, was the true value of the enterprise. And that the 30 percent marketability discount was contrary to the agreement. Mr. Chatterton also asked for an injunction requiring BVR to amend its report and for damages. Mr. Chatterton dropped BVR from the action when BVR agreed to conform its report to any court order. The court denied both a motion and a cross-motion for summary judgment.

Before trial, the parties (more or less[4]) stipulated to the summary judgment record. After a one-day trial, the court found the parties intended to compensate Mr. Chatterton based on the value of the business as a going concern. The court rejected the liquidation value and substituted the going concern value, $789,000. Mr. Chatterton's 49.5 percent interest was, therefore, set at $390,555. After applying the agreed 15 percent minority discount, the court valued Mr. Chatterton's interest at $332,000. The court awarded Mr. Chatterton attorney fees. A & H and Mr. Biallas appeal.

## DISCUSSION

██ ██ Standard of Review. Our standard of review is ably summarized in the recent case of *In re Marriage of Boisen*, 87 Wn. App. 912, 920-21, 943 P.2d 682 (1997):

> The intent of the parties is determined by examining their objective manifestations, including both the written agreement and the context within which it was executed. If the agreement has only one reasonable meaning when viewed in context, that meaning necessarily reflects the parties' intent. If the agreement has two or more reasonable meanings when viewed in context, the court must identify and adopt that which reflects the parties' intent. In the latter situation, a question of fact is presented, and an appellate court reviews the trial court's determination only for substantial evidence.

(Footnotes omitted.) A trial court's findings may be

---

[4]At the beginning of trial, the court and counsel referred to the prior record and no objection was made to the court's proposed reliance thereon.

supplemented or clarified by its oral opinion. *In re Marriage of Booth*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

Our decision in this case turns on whether substantial evidence supports the trial court's construction of this buyout agreement.

██ ██ Meaning of the Term "Value." The agreement here required BVR to calculate the net "value" of the business and then "value" Mr. Chatterton's share by applying an "appropriate" minority discount. The term "value" is inherently ambiguous. *In re Northwest Greyhound Lines, Inc.*, 41 Wn.2d 672, 678, 251 P.2d 607 (1952) (choose from fair value, intrinsic value, market value, fair market value, true value, investment value, nuisance value, going concern value, liquidation value, earnings value, and actual value). The trial judge states in his oral findings that the parties intended that Mr. Biallas would continue operating the business. And accordingly the appropriate valuation was as an "ongoing concern." The court then found that "Clausen did not comply with the requirements of the Agreement for Sale of Stock," when he set the value of this corporation equal to its liquidation value.

The circumstances surrounding the formation of the agreement support the court's interpretation. BVR's liquidation/fair market analysis makes sense only if Mr. Chatterton wanted to know the value of his shares for purposes of offering them to a well-informed, willing buyer off the street. Here, however, the parties bargained for a buyout by the corporation and the sole remaining shareholder, Mr. Biallas. It is one thing to say that a business is worth little more than its hard assets. It is quite another, as the court found here, to deduct the substantial cost of a liquidation which all parties agree will not take place.

The court's finding is further supported by a 5-year noncompetition provision and a 10-year payment schedule. Both suggest that the business would continue. The agreement does not support the assumption of an immediate liquidation with its attendant transactional costs and taxes.

This is substantial evidence that these parties intended

to compensate Mr. Chatterton for his proportionate interest in the business as a going concern and provide only for a minority discount.

An agreement to be bound by an independent appraisal will be set aside if the court finds the appraisal was conducted on a fundamentally wrong basis. *Black Mountain Ranch v. Black Mountain Dev. Co.*, 29 Wn. App. 212, 216, 627 P.2d 1006 (1981), *review denied*, 104 Wn.2d 1019 (1985). An appraiser may not ignore the express terms of a contract. *Id.* The court found that BVR ignored the express terms of the contract. That finding is amply supported by the evidence in this case.

Attorney Fees. RAP 18.1(a) authorizes an award of fees where granted by applicable law. An award of fees is appropriate when authorized by the contract between the parties. *C-C Bottlers, Ltd. v. J.M. Leasing, Inc.*, 78 Wn. App. 384, 387, 896 P.2d 1309 (1995).

The agreement provides for attorney fees. Accordingly, attorney fees and costs are awarded to Mr. Chatterton. RAP 18.1.

We affirm the decision of the trial court.

KURTZ, A.C.J., and KATO, J., concur.