42 P.3d 980 (2002)
110 Wash.App. 561
Louie BORT and Barbara Bort, husband and wife, d/b/a LB Construction, Appellants,
v.
David G. PARKER and Valerie L. Parker, husband and wife, Respondents.
No. 20029-9-III.
Court of Appeals of Washington, Division 3, Panel Two.
March 19, 2002.
*983 David E. Sonn, David G. Estudillo, Jeffers, Danielson, Sonn & Aylward, Wenatchee, for Appellants.
Robert E. Lawrence-Berrey, Jr., Finney, Falk & Lawrence-Berrey, Yakima, Michael R. Tabler, Schultheis & Tabler, Ephrata, for Respondents. *981
*982 BROWN, A.C.J.
David Parker, as "Owner," entered into a home construction contract with "Louie Bort d/b/a LB Construction," as "Contractor." Louie Bort Company (LBC) is a State of Washington licensed and bonded contractor. The "Parties" section of the contract specified LBC's state registration number as belonging to the Contractor. After concluding the Contractors Registration Act (CRA), RCW 18.27.080, precluded LBC's complaint against Mr. Parker for breach of the construction contract, and, without considering LBC's suggested equitable theories, the trial court dismissed LBC's complaint at summary judgment. We decide the record allows reasonable factual inferences that LBC was the intended Contractor precluding summary judgment. Further, the record permits consideration of certain equitable theories if the contract fails after fact-finding. Accordingly, we reverse and remand for trial.

FACTS
Louie Bort is president and a majority shareholder of a corporation named Louie Bort Company (LBC). At the relevant times, LBC was a contractor duly registered with the State of Washington (LOUIEBCO88JH) and in compliance with the Contractor Registration Act, chapter 18.27 RCW.
In the past, Mr. Bort registered the business as LB Construction. Years before this lawsuit, he changed the registered business name to Louie Bort Company. LBC retained LB Construction as a trade name and generally conducted business as Louie Bort Company d/b/a LB Construction. A November 2000 certificate of insurance lists the entity as Louie Bort Company. But the *984 1998, 1997 and 1995 certificates described the insured entity as Louie Bort Company d/b/a LB Construction.
In January 2000, before the disputed construction contract was signed, a materials list signed by Mr. Bort was submitted with Mr. Parker's loan application; the contractor was identified as "Louie Bort Company." Clerk's Papers (CP) at 94. The loan agreement required the borrower and builder's written building contract be submitted and approved as a condition precedent to the loan.
On February 14, 2000, David Parker, as "Owner," entered a construction contract with a "Contractor" described as follows:
LOUIE BORT
d/b/a LB CONSTRUCTION
Contractor Registration No. LOUIEBCO88JH
CP at 6.
The contract partly specified in Section XVIII:

This contractor is registered with the State of Washington, registration no. LOUIEBCO88JH, as a general contractor and has posted with the State a bond or cash deposit of $6,000 for the purpose of satisfying claims against the contractor for negligent or improper work or breach of contract in the conduct of the contractor's business.
CP at 9. (Emphasis added).
The signature portion of the contract contained the following:
CONTRACTOR:
LOUIE BORT d/b/a LB CONSTRUCTION
[signature of Louie Bort]
CP at 9. Further, Mr. Bort, as Contractor, signed a price/cost summary sheet attached to the contract without showing any representative capacity.
On February 17, 2000, the parties modified the contract on some minor points. This addendum listed the contractor as "Louie Bort, L.B. Construction." CP at 11. The signature line contained Mr. Bort's signature alone.
In March 2000, after the construction contract was signed, Mr. Parker received the contemplated loan and signed a construction loan agreement describing the "Builder" as "Louie Bort Company" in a manner consistent with the loan application. CP at 134. Mr. Bort signed in the "Contractor's Signature" block without showing representative capacity but gave in the "Contractor's License # "block below LBC's state contractor's registration number, the same as in the construction contract with Mr. Parker. CP at 138.
In October 2000, after a construction dispute, Mr. Bort filed a separate unsuccessful complaint to foreclose his construction lien, Cause No. 00-2-01123-3. In connection with the lien complaint, Mr. Parker filed a certified statement partly alleging: "I believe the value of the work performed by Louie Bort Company, including suppliers and subcontractors, is approximately $40,000." CP at 325.
In November 2000, Mr. Bort filed this breach of contract complaint, Cause No. 00-2-01197-7, initially describing the plaintiffs as "LOUIE BORT and BARBARA BORT, husband and wife, d/b/a LB CONSTRUCTION." CP at 3. Mr. Bort's former attorney, unaware of LBC, relied on the construction contract to draft the complaint.
In December 2000, Mr. Parker filed an answer seeking dismissal of Mr. Bort's complaint or, alternatively, "a determination of what is owed Mr. Bort" as well as attorney fees pursuant to the terms of the contract. CP at 14. In early January 2001, Mr. Parker filed for summary judgment dismissal under the CRA, RCW 18.27.080, arguing "Louie Bort, d/b/a LB Construction" was an unregistered contractor. Then, Mr. Bort's former attorney became aware of LBC for the first time and filed a motion to amend the complaint to add Louie Bort Company as a plaintiff and the construction lender, as another defendant.
In early February 2001, the trial court orally granted the motion to amend, but nevertheless granted Mr. Parker's requested summary judgment. Later in February, LBC filed an amended summons and complaint listing Louie Bort Company d/b/a LB *985 Construction as the plaintiff and adding the lender as co-defendant. The written order dismissing the complaint with prejudice that was entered in early March 2001 included an award to Mr. Parker of costs and attorney fees. Immediately, LBC filed a notice of appeal regarding the summary judgment. On March 15, 2001, LBC filed an amended notice of appeal addressing the award of costs and attorney fees.
In May 2001 after voluntarily dismissing the lender to facilitate this appeal, LBC filed a second amended notice of appeal identical to the first amended notice of appeal. Later in May, LBC filed a CR 60 motion to vacate the summary judgment, which in support included a copy of Mr. Parker's October 2000 certified statement referring to work done by "Louie Bort Company," and copies of filed liens for "Louie Bort Company" from the dismissed lien case, Cause No. 00-2-01123-3. CP at 322-29.
Mr. Parker then filed a new certified statement indicating he made reference to the Louie Bort Company in his October statement simply because it was the way Mr. Bort's entity was listed in the lien claim. Mr. Parker went on to state: "When I signed the October 31, 2000 statement, I considered `Louie Bort and Barbara Bort' and `Louie Bort Company' interchangeable. I considered the two interchangeable because they designated `Louie Bort Company' as a d/b/a of themselves personally." CP at 334. Mr. Parker further asserted he contracted with Mr. Bort personally and was unaware Mr. Bort "had a corporation." CP at 334.
Another judge denied the motion to vacate in June 2001. The Judge indicated he would not have dismissed the amended complaint but reasoned grounds did not exist to vacate under CR 60. Before the June 29 written order, LBC moved for reconsideration. On July 3, 2001, LBC filed its third amended notice of appeal adding the trial court's denial of his motion to vacate. On July 9, the trial court denied LBC's motion to reconsider the order denying the motion to vacate. On July 20, the trial court granted judgment to Mr. Parker for additional attorney fees without reference to the earlier orders. Finally, in September 2001, LBC filed its fourth amended notice of appeal, which incorporated its earlier appeals and added the July 20 judgment.

ANALYSIS

A. Application of Contractor's Registration Act
The issue is whether the trial court erred in dismissing LBC's breach of contract complaint by concluding no material facts remained regarding LBC as not the party identified as Contractor and deciding summary judgment was merited for Mr. Parker under the Contractor's Registration Act as a matter of law.

1. Standard of Review
In reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Huff, 141 Wash.2d at 7, 1 P.3d 1138. "A material fact is one upon which the outcome of the litigation depends." Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 223, 961 P.2d 358 (1998) (citing Ruff v. King County, 125 Wash.2d 697, 703, 887 P.2d 886 (1995)). The appellate court reviews all facts and reasonable inferences in the light most favorable to the nonmoving party. Huff, 141 Wash.2d at 7, 1 P.3d 1138. Issues of law are reviewed de novo. Id. "If reasonable minds can reach different conclusions, summary judgment is improper." DePhillips v. Zolt Constr. Co., Inc., 136 Wash.2d 26, 30, 959 P.2d 1104 (1998) (citing Kalmas v. Wagner, 133 Wash.2d 210, 215, 943 P.2d 1369 (1997)).

2. The Contractor Registration Act
Here, the trial court interpreted and applied the Contractor Registration Act (CRA) standing provision:
No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or *986 for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract. For the purposes of this section, the court shall not find a contractor in substantial compliance with the registration requirements of this chapter unless: (1) The department has on file the information required by RCW 18.27.030; (2) the contractor has a current bond or other security as required by RCW 18.27.040; and (3) the contractor has current insurance as required by RCW 18.27.050. In determining under this section whether a contractor is in substantial compliance with the registration requirements of this chapter, the court shall take into consideration the length of time during which the contractor did not hold a valid certificate of registration.
RCW 18.27.080.
The CRA requires a contractor to provide a written statement to a person in Mr. Parker's position disclosing the contractor's registration number, and the contractor's bonded and insured status. RCW 18.27.114. See Williamson, Inc. v. Calibre Homes, Inc., 106 Wash.App. 558, 564, 23 P.3d 1118 (2001) (registration requires evidence of bond and liability insurance). Contract Section XVIII embodies this requirement.
Regarding purpose, the CRA states: "It is the purpose of this chapter to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140. "The primary objective of RCW 18.27 is to require all contractors who offer to do work, submit a bid, or perform any work to register with the Department of Labor and Industries." Frank v. Fischer, 108 Wash.2d 468, 471, 739 P.2d 1145 (1987).
"The statute does not render a contract between a homeowner and [an unregistered] contractor void ab initio." Davidson v. Hensen, 135 Wash.2d 112, 127, 954 P.2d 1327 (1998). "Rather, the contract has limited enforceability as the contractor did not comply with the registration statute." Id. Thus, an owner contracting with an unregistered contractor generally cannot be compelled to pay the contractor. Vedder v. Spellman, 78 Wash.2d 834, 838, 480 P.2d 207 (1971). Effectively, an unregistered contractor has no standing to seek redress from the courts if the person benefiting from the fruits of his unlicensed labor refuses to pay. Vedder, 78 Wash.2d at 838, 480 P.2d 207. The bar to recovery for unregistered contractors extends to alternative remedies such as unjust enrichment. Stewart v. Hammond, 78 Wash.2d 216, 220, 471 P.2d 90 (1970). "This is the `teeth' of the statute." Vedder, 78 Wash.2d at 838, 480 P.2d 207.
Conversely, if the person contracting with the unregistered contractor voluntarily pays the contractor for work completed, he or she cannot seek reimbursement from the contractor. Vedder, 78 Wash.2d at 838, 480 P.2d 207. Thus, an unregistered contractor can assert completion of work as a defense to a claim of reimbursement. Davidson, 135 Wash.2d at 129, 954 P.2d 1327. Therefore, a contractor's failure to fully comply with CRA registration requirements does not render the underlying contract void, but merely limits its enforceability for public policy reasons. Id.
An unregistered contractor may bring an action for compensation if he or she has complied substantially with the CRA; in other words, satisfied the legislative purpose of the statute. Williamson, 106 Wash.App. at 564, 23 P.3d 1118. A contractor in substantial compliance with the CRA may sue in contract or under alternative theories such as quantum meruit. Murphy v. Campbell Invest. Co., 79 Wash.2d 417, 422-23, 486 P.2d 1080 (1971). "Whether there has been substantial compliance depends on the particular facts of each case." Williamson, 106 Wash. App. at 564, 23 P.3d 1118.

3. Standing of Each Entity
Mr. Bort and LB Construction are not registered under the CRA. However, *987 LBC was registered. Here, Mr. Parker contracted with Mr. Bort, a majority shareholder of LBC, with specific reference to LBC's registration number not only in the identification of the parties but in Section XVIII of the contract. Accordingly, the purpose of the CRA was not frustrated. Thus, while the trial court did not err in granting summary judgment regarding the entities of Mr. Bort individually or his d/b/a, LB Construction, reasonable factual inferences may be drawn suggesting LBC's standing under the CRA.
Mr. Parker, relying on an insurance agent's statement, contends LBC was not insured and thus not in compliance with the CRA. We disagree. The agent's statement merely reveals a typical commercial liability policy would not cover a corporate officer acting in his individual capacity. The agent's statement is irrelevant as to LBC, which undeniably was insured and properly registered under the CRA at the critical times; therefore, LBC has standing to sue Mr. Parker provided the record allows inferences it was a party to the contract. Lobak Partitions, Inc. v. Atlas Constr. Co., Inc., 50 Wash.App. 493, 502, 749 P.2d 716 (1988); Leon's Plumbing & Heating, Inc. v. Aqua Drilling, 26 Wash.App. 789, 794, 614 P.2d 237 (1980). Accordingly, we review the record in a light most favorable to LBC to see if reasonable inferences can be drawn tending to show Mr. Parker contracted, directly with, or indirectly with reference to, LBC.
Of course, if LBC was not a party to the construction contract, it could not seek recovery under a contract theory. See Lobak Partitions, 50 Wash.App. at 497, 749 P.2d 716 ("Under ordinary circumstances, a stranger to a contract cannot sue."). However, even if LBC was not a party to the contract, as a registered contractor, it could seek a remedy by way of unjust enrichment or quantum meruit. RCW 18.27.080; Murphy, 79 Wash.2d at 422-23, 486 P.2d 1080.
In this summary judgment context, we focus on whether genuine material fact issues remain regarding LBC's status as a party to the Parker construction contract, while applying the rules for interpreting the critical contract. "The touchstone of contract interpretation is the parties' intent." Tanner Electric Coop. v. Puget Sound Power & Light Co., 128 Wash.2d 656, 674, 911 P.2d 1301 (1996) (citing Scott Galvanizing, Inc. v. N.W. EnviroServices, Inc., 120 Wash.2d 573, 580, 844 P.2d 428 (1993)). "In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from `viewing the contract as a whole, the subject matter and objective of the contract, all circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Scott, 120 Wash.2d at 579-80, 844 P.2d 428 (quoting Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990)). See also Tanner Electric Cooperative, 128 Wash.2d at 674, 911 P.2d 1301. "This analytical framework ... has been called the `context rule.'" Berg, 115 Wash.2d at 667, 801 P.2d 222 (quoting Eagle Ins. Co. v. Albright, 3 Wash.App. 256, 474 P.2d 920 (1970)).
"Contractual language also must be interpreted in light of existing statutes and rules of law." Tanner Electric Cooperative, 128 Wash.2d at 674, 911 P.2d 1301 (citing 3 ARTHUR L. CORBIN, CONTRACTS § 551, at 198 (1960)). "Interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." Tanner Electric Coop., 128 Wash.2d at 674, 911 P.2d 1301 (citing Scott, 120 Wash.2d at 582, 844 P.2d 428). See also Berg, 115 Wash.2d at 668, 801 P.2d 222.
"Interpretation of contracts may require the use of parol evidence." DePhillips, 136 Wash.2d at 32, 959 P.2d 1104. A trial court may resort to parol evidence for the limited purpose of construing the otherwise clear and unambiguous language of a contract in order to determine the intent of the parties. Berg, 115 Wash.2d at 669, 801 P.2d 222. See also Hollis v. Garwall, Inc., 137 Wash.2d 683, 693, 974 P.2d 836 (1999); DePhillips, 136 Wash.2d at 32, 959 P.2d *988 1104; RESTATEMENT (SECOND) OF CONTRACTS §§ 212, 214(c) (1981).
"Parol evidence admitted to interpret the meaning of what is actually contained in a contract does not alter the terms contained in the contract. Thus, use of parol, or extrinsic, evidence as an aid to interpretation does not convert a written contract into a partly oral, partly written contract." DePhillips, 136 Wash.2d at 32, 959 P.2d 1104 (italics in original). "Moreover, the `parol evidence rule' precludes use of parol evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract, i.e., one which is intended as a final expression of the terms of the agreement." DePhillips, 136 Wash.2d at 32, 959 P.2d 1104 (citing In re Marriage of Schweitzer, 132 Wash.2d 318, 327, 937 P.2d 1062 (1997); U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 570, 919 P.2d 594 (1996); Berg, 115 Wash.2d at 670, 801 P.2d 222).
"Under Berg and cases interpreting Berg, extrinsic evidence may be relevant in discerning that intent, where the evidence gives meaning to words used in the contract." Hollis, 137 Wash.2d at 695, 974 P.2d 836 (citing Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 189, 840 P.2d 851 (1992)). Admissible extrinsic evidence does not include (1) evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term, (2) evidence that would show an intention independent of the contract, or (3) evidence that varies, contradicts or modifies the written language of the contract. Hollis, 137 Wash.2d at 695, 974 P.2d 836.
"In discerning the parties' intent, subsequent conduct of the contracting parties may be of aid, and the reasonableness of the parties' respective interpretations may also be a factor in interpreting a written contract." Berg, 115 Wash.2d at 668, 801 P.2d 222. In applying these principles, the reviewing court strives to ascertain the meaning of what is written in the contract, and not what the parties intended to be written. The Confederated Tribes of the Chehalis Reservation v. Johnson, 135 Wash.2d 734, 752, 958 P.2d 260 (1998); Berg, 115 Wash.2d at 669, 801 P.2d 222.
Here, the subject of the contract was home construction. An objective of the contract was to have a contractor licensed and registered with the State of Washington as builder. Although the Parties' portion of the contract identifies the "Contractor" as "Louie Bort, d/b/a LB Construction," it further identified the Contractor by LBC's registration number. CP at 6. Notably, the contract's "Section XVIIICONTRACTOR REGISTRATION NOTICE TO CUSTOMER" specifies, "This contractor is registered with the State of Washington" and gives the same registration number used in the Parties' portion of the contract; thereafter the section refers to the duties of "the contractor" under "your contract." CP at 9.
Viewing the inferences from the contract language in a light most favorable to LBC, the Contractor could reasonably be the entity identified by registration number, Louie Bort Company rather than Mr. Bort individually. This interpretation is additionally reasonable in light of the clear contract objective to have a registered contractor build the house. If a contract has two or more reasonable meanings when viewed in context, a question of fact is presented. Chatterton v. Business Valuation Research, Inc., 90 Wash.App. 150, 155, 951 P.2d 353 (1998).
Moreover, Mr. Parker's interpretation of the contract is grounded on the flawed premises (1) he intended to contract solely with an unregistered individual, and (2) the registration number was irrelevant. Mr. Parker's interpretation would require us to ignore the contract's objectives, the use of the registration number in multiple places, the language specifying "this contractor" and regarding "the contractor" in "your contract" in Section XVIII, and finally, the overriding CRA. CP at 9. "Contractual language also must be interpreted in light of existing statutes and rules of law." Tanner Electric Coop., 128 Wash.2d at 674, 911 P.2d 1301 (citing 3 ARTHUR L. CORBIN, CONTRACTS § 551, at 198 (1960); see also State v. Farmers Union Grain Co., 80 Wash.App. 287, 292, 908 P.2d 386 (1996)) ("Parties are presumed to contract *989 with reference to existing statutes"). Significantly, Mr. Parker has never claimed misrepresentation or fraud on the part of LBC or Mr. Bort. Accordingly, Mr. Parker's arguments are unconvincing.
Regarding the registration number, Mr. Parker complains it is unfair to expect him to determine the identity of the contractor to whom the number applies. But Mr. Parker begs the question why the CRA requires the registration number to be incorporated into the contract. RCW 18.27.114. Contrary to Mr. Parker's assertion, the registration number is not irrelevant; it is necessary to ensure the work is being done by a registered contractor, and inclusion of the number aids Mr. Parker in confirming he is protected under the CRA. RCW 18.27.114; RCW 18.27.140; Frank v. Fischer, 108 Wash.2d 468, 471, 739 P.2d 1145 (1987).
Additionally, extrinsic evidence raises a reasonable inference that LBC was directly involved in the contract. First, prior to execution of the construction contract, LBC submitted a materials list to the construction lender to facilitate the loan agreement. Second, subsequent to the signing of the contract, Mr. Parker signed the loan agreement, which identified the contractor as LBC. And third, in connection with the lien claim, Mr. Parker alleged LBC completed less work than it claimed.
The materials list is reasonably attributed to Mr. Parker as part of his loan application and predated the construction contract. The loan agreement required the written construction contract. Even if the materials list was submitted without Mr. Parker's direct knowledge, the inference is that Mr. Parker relied upon the loan application representations to get his loan. Thus, reasonable inferences exist that the parties intended LBC, a properly registered contractor, to be a party to the contract. See Berg, 115 Wash.2d at 668, 801 P.2d 222 (reasoning subsequent conduct of parties may aid in contract interpretation).
Next, Mr. Parker, relying on RAP 9.12, argues we should disregard his certified statement recognizing LBC as Contractor submitted in the dismissed lien suit. Alternatively, Mr. Parker asks us to consider his later statement explaining away his earlier statement. But, we do not resolve material factual issues in summary judgment proceedings. Further, the statement is a part of the record developed below and on appeal, and Mr. Parker has not moved to have it stricken. See Mithoug v. Apollo Radio, 128 Wash.2d 460, 463, 909 P.2d 291 (1996) (noting failure to move to strike and reasoning party should be afforded opportunity to rely on all documents "called to the attention of the trial court."). Given that Mr. Parker's statement is relevant to an issue before the trial court, was called to the trial court's attention, and will aid this court in arriving at a just resolution, we are reluctant to accept Mr. Parker's invitation to disregard it entirely. RAP 1.2(a).
Even if we did not consider the disputed statement, we have already reasoned the other evidence suffices to raise a reasonable inference that LBC was the intended party to the construction contract. Given this record, material facts remain. We cannot conclude as a matter of law that the contract did not include LBC as a party. In sum, although the trial court did not err when dismissing the complaint of Louie Bort, d/b/a LB Construction, we conclude it erred in dismissing LBC's amended complaint.

B. Alternative Theories
Assuming after remand for fact-finding the trial court decides LBC cannot recover on the construction contract, the next issue is whether LBC can alternatively rely in equity on (1) reformation on the basis of scrivener's error, (2) ratification, or (3) unjust enrichment or quantum meruit.

1. Reviewability
As noted earlier, a contractor complying with the CRA may rely on alternative theories such as quantum meruit and unjust enrichment. RCW 18.27.080; Murphy v. Campbell Invest. Co., 79 Wash.2d 417, 422-23, 486 P.2d 1080 (1971). Mr. Parker seemingly contends such theories are unavailable to LBC because he did not intend to contract with that entity, but Louie Bort, d/b/a LB Construction. But the record shows LBC *990 was at the critical times properly registered and thus had standing to seek compensation through the courts. See Murphy, 79 Wash.2d at 422-23, 486 P.2d 1080.
Even so, Mr. Parker contends LBC failed to preserve its alternative claims for purposes of this appeal because LBC filed solely an amended complaint for breach of contract seeking payment for the value of services performed and profits, attorney fees, and "such other and further relief the Court deems just under the circumstances." CP at 219. In his answer, Mr. Parker invited the trial court to determine "what is owed Mr. Bort." CP at 14. LBC addressed the mistake of omitting the word "Company" from the construction contract. In response, Mr. Parker relied on the doctrine of contract reformation, when arguing against LBC's mistake allegation. Thus, we can review to some extent the issue of whether reformation is applicable.
On the other hand, LBC appears to raise ratification for the first time on appeal, thus the theory is not reviewable. RAP 2.5(a); RAP 9.12. This does not bar LBC from presenting this issue to the trial court on remand, if its contract theory fails.
Although the briefing and record contains no specific reference to unjust enrichment or quantum meruit, the pleadings below and the contentions in the appellate briefing clearly implicate those well-settled doctrines. RAP 1.2(a); Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 710, 592 P.2d 631 (1979); Honegger v. Yoke's Wash. Foods, Inc., 83 Wash. App. 293, 295, 921 P.2d 1080 (1996); Viereck v. Fibreboard Corp., 81 Wash.App. 579, 582-83, 915 P.2d 581 (1996); State v. Clark, 53 Wash.App. 120, 123, 765 P.2d 916 (1988). As LBC aptly notes, "the basic dispute" in this case is whether Mr. Parker should pay LBC for its work.
Further, Mr. Parker acknowledged as much in his answer when he invited the trial court to determine any amounts owed to "Mr. Bort." Under the circumstances, we can, in the interests of serving justice, exercise our discretion in considering unjust enrichment or quantum meruit as they apply to this case. RAP 1.2(a); RAP 2.5(a); RAP 12.1(b); State v. Aho, 137 Wash.2d 736, 740-41, 975 P.2d 512 (1999); Jones v. Stebbins, 122 Wash.2d 471, 479, 860 P.2d 1009 (1993).

2. Scrivener's Error
"In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error. This permits a court acting in equity to reform an agreement." Estate of Harford, 86 Wash.App. 259, 263, 936 P.2d 48 (1997) (citing Berg v. Ting, 125 Wash.2d 544, 554-55, 886 P.2d 564 (1995); Snyder v. Peterson, 62 Wash.App. 522, 526-27, 814 P.2d 1204 (1991)). Here, as discussed earlier, the evidence raises a reasonable inference that the parties intended LBC to be the contractor. It may be inferred that the word "Company" was to be included in the contract but was omitted. Cf. Harford, 86 Wash.App. at 264, 936 P.2d 48 (noting "it is not readily apparent whether" certain language "was meant to be deleted or included.").
Mr. Parker, without citation to relevant authority, contends no scrivener's error existed because of the multiple times the word "Company" does not appear in the contract. But given that the other evidence indicates the intent to contract with LBC, Mr. Parker highlights, at most, a factual dispute for the fact finder. Moreover, given this record, a scrivener's error seems likely, given the general carelessness in which LBC variously identified itself for purposes of contracting, insurance, bonding, and registration. In sum, we conclude genuine issues of material fact remain as to whether a scrivener's error affected the contract.

3. Unjust Enrichment or Quantum Meruit
Unjust enrichment and quantum meruit are related doctrines; the former is a broader concept that encompasses the latter. Bailie Communications, Ltd. v. Trend Bus. Systems, Inc., 61 Wash.App. 151, 160, 810 P.2d 12 (1991), 814 P.2d 699. Although Washington courts have previously characterized unjust enrichment and quantum meruit as equitable forms of recovery, the two *991 doctrines are better viewed as legal remedies in the form of restitution. Ducolon Mechanical, Inc. v. Shinstine/Forness, Inc., 77 Wash.App. 707, 711, 893 P.2d 1127 (1995).
"A person has been unjustly enriched when he has profited or enriched himself at the expense of another contrary to equity." Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wash.App. 719, 731-32, 741 P.2d 58 (1987). Enrichment alone will not trigger the doctrine; the enrichment must be unjust "both under the circumstances and as between the two parties to the transaction." Farwest Steel Corp., 48 Wash. App. at 732, 741 P.2d 58 (citing McGrath v. Hilding, 41 N.Y.2d 625, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977)). The person against whom the plaintiff asserts unjust enrichment must be more than a mere incidental beneficiary of the transaction. Farwest Steel Corp., 48 Wash.App. at 732-33, 741 P.2d 58.
The evidence here, viewed in a light favorable to LBC, indicates Mr. Parker received a substantial benefit from LBC's work. LBC submitted the materials list, the contract employed LBC's registration number, the construction loan included LBC as builder, and Mr. Parker acknowledged LBC's role in the construction project. The enrichment may be unjust in that Mr. Parker seems to be using the CRA to avoid paying for LBC's work by asserting the CRA defense against Mr. Bort personally.
"The term `quantum meruit' literally means `as much as deserved.'" Douglas Northwest, Inc., v. Bill O'Brien & Sons Constr., Inc., 64 Wash.App. 661, 683, 828 P.2d 565 (1992) (quoting Bignold v. King County., 65 Wash.2d 817, 826, 399 P.2d 611 (1965)). "It is not a legal obligation like a contract or quasi-contract, but rather, is a remedy`a reasonable amount for work done.'" Douglas Northwest, 64 Wash.App. at 683, 828 P.2d 565 (quoting Eaton v. Engelcke Mfg., Inc., 37 Wash.App. 677, 680, 681 P.2d 1312 (1984)). Generally, the contractor relying on quantum meruit may recover the reasonable value of the benefit conferred upon the defendant. See Ducolon Mechanical, 77 Wash.App. at 711-13, 893 P.2d 1127.
Here, when the facts are reviewed in a light most favorable to LBC, it appears the contractor has a valid quantum meruit claim if the contract claim fails. As noted earlier, LBC was a registered contractor at the critical times, which afforded it standing to seek compensation in contract and equity. Murphy, 79 Wash.2d at 422-23, 486 P.2d 1080.

C. Attorney Fees
Both sides claim attorney fees under the contract, and the trial court awarded Mr. Parker such fees below. Because we reverse the summary judgment, Mr. Parker's fee award is reversed and vacated as well. In re Marriage of Young, 26 Wash.App. 843, 846, 615 P.2d 508 (1980). Contractual attorney fees are recoverable by the prevailing party on appeal. RAP 18.1; Chatterton v. Bus. Valuation Research, Inc., 90 Wash.App. 150, 157, 951 P.2d 353 (1998). However, LBC's eligibility for contractual attorney fees at trial and on appeal must be decided on remand. Michigan National Bank v. Olson, 44 Wash.App. 898, 906, 723 P.2d 438 (1986). Accordingly, the trial court will determine any attorney fee awarded in connection with this appeal.

CONCLUSION
Material fact issues remain regarding the legal entity that Mr. Parker intended to and did contract with. If, after fact finding, the trial court determines LBC was not the intended contractual party, then LBC as a properly registered State contractor is not prevented from pursuing its equitable theories of recovery as discussed here for the alleged scriveners' error, unjust enrichment, and quantum meruit.
Reversed and remanded for further proceedings consistent with this opinion.
WE CONCUR: SCHULTHEIS, J. and KATO, J.