[No. 4977-9-III. Division Three. June 14, 1983.]

SNAP-ON TOOLS CORPORATION, *Appellant,* v. CHRIS A. ROBERTS, ET AL, *Respondents.*

*Scott C. Broyles,* for appellant.

*Jay R. Jones,* for respondents.

GREEN, J.—This action was brought by Snap–On Tools Corporation against Chris and Kathy Roberts to recover an overpayment mistakenly made as a result of the mutual termination of a dealership agreement. The Roberts were allegedly unjustly enriched in the amount of $4,346.50. The issue is whether the trial court erred in granting summary judgment for the Roberts. We hold it did and reverse.

Mr. Roberts became a dealer for Snap–On in May 1979. In April 1981, they executed a mutual termination agreement providing that Snap–On would credit Mr. Roberts for return of his inventory at current dealer cost. On May 13, Snap–On paid Mr. Roberts $40,597.12, retaining $160.60 until July 16 as a reserve for "doubtful open accounts." In July Snap–On wrote a letter to Mr. Roberts informing him a clerical error had been made in computing the credit for returned inventory resulting in an overpayment of $4,346.50. When Mr. Roberts refused Snap–On's request to return the overpayment, this action was commenced.

Motions for summary judgment were filed by both parties. The court granted the Roberts' motion ruling the termination agreement, coupled with the payment, was an accord and satisfaction. Both parties apparently agree this

theory is inapplicable here.[1] However, the Roberts argue summary judgment should nevertheless be affirmed because the settlement was a general release and the mistake was unilateral, which *is insufficient as a matter of law to void the agreement.*

■ A motion for summary judgment may be granted only if the pleadings, affidavits, depositions and admissions on file demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980). Interpreting the affidavits and documents submitted on the motion in a light most favorable to Snap–On, as we are required to do, *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256, 616 P.2d 644 (1980); *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 588 P.2d 1346 (1979), we find a genuine issue of material fact exists.

First, we do not agree that the termination agreement followed by the payment of $40,597.12 operated as a release of Snap–On's claim. The termination agreement specifically stated the parties agreed to waive all claims against each other *except* matters covered by the termination agreement itself.

■ Second, we cannot say as a matter of law the mistake was insufficient to require return of the overpayment. Generally, courts will not relieve a party from a bad bargain, particularly if the basis of the bargain was peculiarly within the knowledge of that party. *Loeb Rhoades, Hornblower & Co. v. Keene,* 28 Wn. App. 499, 500–01, 624 P.2d 742 (1981); *Pepper v. Evanson,* 70 Wn.2d 309, 313–14, 422

---

[1]We agree. The doctrine of accord and satisfaction requires a dispute over the total amount due and a settlement by some performance other than that which is due. *Kibler v. Frank L. Garrett & Sons, Inc.,* 73 Wn.2d 523, 526, 439 P.2d 416 (1968); *Department of Fisheries v. J–Z Sales Corp.,* 25 Wn. App. 671, 676, 610 P.2d 390 (1980); *Plywood Mktg. Assocs. v. Astoria Plywood Corp.,* 16 Wn. App. 566, 574, 558 P.2d 283, 96 A.L.R.3d 1231 (1976). There is no evidence here of any dispute over the amount to be paid under the termination agreement. Mr. Roberts admitted he relied on Snap–On's computations and accepted its figures.

P.2d 817 (1967). However, a unilateral mistake of fact may be grounds for relief if the other party knows or is charged with knowing of the mistake. *Halver v. Welle,* 44 Wn.2d 288, 266 P.2d 1053 (1954); *Loeb Rhoades, Hornblower & Co. v. Keene, supra* at 500; *Appleway Leasing, Inc. v. Tomlinson Dairy Farms, Inc.,* 22 Wn. App. 781, 784, 591 P.2d 1220 (1979); *Puget Sound Nat'l Bank v. Selivanoff,* 9 Wn. App. 676, 681, 514 P.2d 175 (1973). No party may retain money claiming ignorance of facts which are reasonably ascertainable and would alert that party to the mistake. *Puget Sound Nat'l Bank,* at 680–81.

In Mr. Roberts' affidavit in support of his motion for summary judgment, he asserted he had no knowledge whether the alleged error was correct because he was not permitted to enter into discussions or negotiations concerning the net settlement, but was instructed he must accept Snap–On's figures. He asserted the amount paid was within the range of his calculations and he was willing to accept the payment so that the unhappy relationship could be ended. He stated he totally relied upon Snap–On's computations. On the other hand, the mistake is apparent from an examination of the "Dealer's Stock Order" filed by Snap–On which was prepared in itemizing the returned inventory and calculating dealer cost. The "Recap" of the order shows a unit price of $13,180.79, a discount of 33 percent, and a dealer cost of $13,177.79. The error is obvious.

A question of fact exists whether Mr. Roberts had access to this dealer's stock order and thus notice of the mistake at the time he received the payment. At this stage of the proceeding, it may be inferred that Mr. Roberts, who sold Snap–On's products, was familiar with the unit or retail price and dealer cost of the products in his inventory. The mutual termination agreement stated the inventory he retained would be repurchased. Having been a dealer for Snap–On for 2 years, there is an issue of fact concerning whether, even if he did not receive the dealer's stock order, he nevertheless knew or should have known his inventory had been incorrectly calculated.

Finally, the Roberts contend Snap–On did not have clean hands because Mr. Roberts was not permitted to negotiate the amounts he should receive and Snap–On did not pay him within the 10–day time limit provided in the termination agreement. We do not find these assertions support summary judgment as a matter of law. Although Mr. Roberts may not have been permitted to participate in calculating the total sums due, he does not allege any error was made in those computations; therefore, he was not disadvantaged by the procedure used. Second, while the termination agreement stated payment was to be made within 10 days after its execution, it provided an ultimate time limit of 90 days, and payment was made within that time period.

Reversed.

ROE, C.J., and McINTURFF, J., concur.