[No. 37585-7-I.   Division One.   May 5, 1997.]

*In the Matter of the Estate of* EDITH M. HARFORD.
MITCH BIRCHFIELD, ET AL., *Appellants*, v. FRED
HARFORD, ET AL., *Respondents.*

*Paul J. Reni* and *Michael E. Keller,* for appellants.
*Jerome R. Cronk,* for respondents.

GROSSE, J. — A party to a settlement agreement seeking relief on the basis of mistake must establish the legal basis for that relief under the law of contracts. The mistake must be mutual, not unilateral, as was the case here.

Married in 1955, Edith and Delbert Harford each had children from prior marriages: Edith's children are Fred, Joy, and Louise, and Delbert's child was Opal. In 1972, Delbert executed a will which stated that Edith and Delbert had agreed to leave their property to each other, and then, upon the survivor's death, in equal shares to all four

children. Edith signed Delbert's will indicating her consent to the mutual agreement clause. After Delbert's death in 1974, Edith executed a will that provided only for her three children, Fred Harford, Joy Andreason, and Louise Hill, and not for her step-daughter, Opal Birchfield. Twenty years later, in 1994, Opal died with her two children, Mitch and Karen Birchfield, surviving her. Edith died two months after Opal, leaving her children her entire estate. Edith's children (Harford) filed a probate action. In a separate action, Opal's children (Birchfield) sought to enforce the contract to devise, claiming one-quarter of their step-grandmother's estate, including alleged inter vivos transfers.

The parties started negotiating a settlement and exchanging documents that would give Birchfield one-quarter of the estate and allow for administration of the estate. However, the parties disagreed over whether inter vivos transfers made by Edith were to be included in the agreement. According to Birchfield's version of events, during early 1995, the attorneys were working on an agreement that included Birchfield receiving one-fourth of the estate and the final signed agreement reflected that intent. According to Harford's version of events, because of the impasse over the inter vivos issue, Harford proposed to settle only the administration of the estate and drafted an agreement to do only this. Nevertheless, the eventual agreement drafted by Harford included language giving Birchfield a one-quarter interest in the estate, as well as providing for the administration of the estate. All the attorneys and all of the parties signed this agreement and a stipulated order was entered. Later, Harford claimed that the language granting the one-quarter interest was left in the agreement because of an editing error by its attorney.

Harford moved to have the stipulated order vacated under CR 60(b). The court agreed that a mistake had been made, finding that:

> Defendants' attorney mistakenly left language in the third draft, which language had been in each of the two prior

drafts. This language left one quarter of the estate to the plaintiffs. Defendants' attorney did not intend this language to be in the order, but made a mistake in editing the draft on his computer. Defendants and their attorney failed to notice that the language was in the order they had drafted. Upon discovering his mistake, defendants' attorney promptly notified opposing counsel.

Determining that Harford had not authorized its attorney to enter the order as drafted and that Birchfield did not suffer prejudice in reliance on the order, the court vacated the stipulated order. Harford then argued that Birchfield's interest in the estate lapsed because Opal did not survive Edith. Granting summary judgment in favor of Harford, the trial court dismissed Birchfield's claim to the estate as a matter of law. Birchfield appeals both the summary judgment order and the order vacating the settlement agreement.

Our review of the record reveals evidence in support of the court's finding that Harford's attorney made an editing mistake in drafting the final agreement. For example, before the final version was signed, a draft stipulation was exchanged entitled, "Stipulation and Order *Granting Distributive Share of Estate,* Consolidating Cases, and Providing for Further Administration of Estate." (Emphasis added.) In contrast, in the final version, the language regarding the "distributive share" was deleted in the title: "Stipulation and Order Consolidating Cases, and Providing for Further Administration of Estate." Thus, we will accept that Harford did not intend to draft a settlement agreement that granted Birchfield an interest in the estate. The real question is whether this sort of error justifies the vacation of an order based on a settlement agreement.

The principles of the law of contracts apply to review of settlement agreements.[1] Under contract prin-

---

[1]*Morris v. Maks,* 69 Wn. App. 865, 868-69, 850 P.2d 1357, *review denied,* 122 Wn.2d 1020 (1993).

ciples, a mutual mistake may justify vacation of a settlement agreement.[2] In *Haller v. Wallis*, a case involving a mistake regarding the extent of injuries, the court found that mutual mistake was necessary to set aside a stipulated agreement:

> If [the judgment] conforms to the agreement or stipulation, it cannot be changed or altered or set aside without the consent of the parties unless it is properly made to appear that it was obtained by fraud or mutual mistake or that consent was not in fact given, which is practically the same thing. It will not be set aside on the ground of surprise and excusable neglect. . . . Erroneous advice of counsel, pursuant to which the consent judgment was entered is not ground for vacating it.[3]

Here, there was no conclusive evidence of a mutual mistake, rather the evidence was contested. Most significantly, the trial court did not make a finding that Birchfield intended to have a settlement agreement that only addressed the administration of the estate. Such silence must be interpreted as a finding that there was not a mutual mistake since Harford had the burden of proving this point.[4]

Harford argues that the mistake was akin to a "scrivener's error." In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error. This permits a court acting in equity to reform an agreement.[5] Here, although the trial court found that Harford intended that the agreement not have the one-quarter language, it did not make the corresponding find-

---

[2]*Haller v. Wallis*, 89 Wn.2d 539, 544, 573 P.2d 1302 (1978).

[3]*Haller*, 89 Wn.2d at 544 (quoting 3 EDWARD WILLIAM TUTTLE, A TREATISE OF THE LAW OF JUDGMENTS § 1352, at 2776-77 (5th ed. rev. 1925)).

[4]*See Golberg v. Sanglier*, 96 Wn.2d 874, 880, 639 P.2d 1347, 647 P.2d 489 (1982).

[5]*See Berg v. Ting*, 125 Wn.2d 544, 554-55, 886 P.2d 564 (1995); *Snyder v. Peterson*, 62 Wn. App. 522, 526-27, 814 P.2d 1204 (1991).

ing with respect to Birchfield's intentions. Significantly, for the purpose of the scrivener's error analysis, it is not readily apparent whether the one-quarter language was meant to be deleted or included.

■ Harford also relies on *In re Kramer*, in which an order was amended because the lawyer's secretary made a mistake and the lawyer missed it. That case does not apply here. The rationale of *Kramer* was that the order did not express the *court's* intent and therefore was properly modified.[6] Because the trial court here did not express any opinion as to its intention other than to ratify what the parties had agreed to, *Kramer* does not apply. For similar reasons, the clerical error rule, CR 60(a), does not apply.[7] Harford also claims unpersuasively that the error was an "irregularity" under CR 60(b)(1). However, irregularities occur when there is a procedural defect, such as failing to follow a prescribed rule.[8]

■ Harford argues that equitable principles should provide relief on the theory that Birchfield should not be able to benefit from Harford's obvious mistake. Under contract principles, a party may be relieved of a mistake it made, if the other party "knows or is charged with knowing of the mistake"[9] and acts unfairly by not informing the other side of the mistake. For example, in *Snap-On Tools*, one party accidentally overpaid the opposing side due to a mistaken calculation. The party receiving the money was not allowed to retain it because "[n]o party may retain money claiming ignorance of facts which are

---

[6]*In re Estate of Kramer*, 49 Wn.2d 829, 830, 307 P.2d 274 (1957).

[7]*See* 4 Lewis H. Orland & Karl B. Tegland, Washington Practice, *Rules Practice*, CR 60, at 714-15 (4th ed. 1992).

[8]*E.g., Mosbrucker v. Greenfield Implement, Inc.*, 54 Wn. App. 647, 652, 774 P.2d 1267 (1989).

[9]*Snap-On Tools Corp. v. Roberts*, 35 Wn. App. 32, 35, 665 P.2d 417 (1983).

reasonably ascertainable and would alert that party to the mistake."[10]

In order to apply this principle, the trial court would have needed to find that Birchfield was aware that Harford's counsel made a mistake and was charged with alerting Harford of that mistake. There is contradictory evidence in the record as to whether the mistake was obvious to Birchfield. Nothing in the court's findings indicates that it decided that Birchfield knew, or should have known, of Harford's intent to have a settlement agreement that addressed only the administration of the estate. Again, applying the principle that the absence of a finding is considered a finding against the party with the burden of proving the issue, we must hold that Harford cannot prevail on this ground.

■ Harford also argues that it did not authorize its attorney to draft such a settlement agreement. This argument is without merit. First, "the incompetence or neglect of a party's own attorney is not sufficient grounds for relief from a judgment in a civil action."[11] Once a party has designated an attorney to represent him or her, the court and the other parties to an action are entitled to rely upon that authority.[12]

Second, although Harford relies on *Graves v. P.J. Taggares Co.*[13] for the proposition that an attorney is without authority to surrender a substantial right of a client unless special authority is granted the attorney, *Graves* is factually distinguishable. It involved an attorney who, inter alia, failed to appear in a summary judgment motion, failed to present any evidence at trial, and failed to advise his clients of a $131,000 memorandum order

---

[10]*Snap-On Tools Corp.*, 35 Wn. App. at 35. *See also Basin Paving, Inc. v. Port of Moses Lake*, 48 Wn. App. 180, 186, 737 P.2d 1312 (1987) (quoting *Gammel v. Diethelm*, 59 Wn.2d 504, 507, 368 P.2d 718 (1962)).

[11]*Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040, *review denied*, 129 Wn.2d 1028 (1996).

[12]*Haller*, 89 Wn.2d at 547.

[13]94 Wn.2d 298, 303-04, 616 P.2d 1223 (1980).

against them.[14] No such egregious circumstances are before us here. The uncontroverted facts show that all three of Edith's children, Fred, Louise, and Joy, signed the document. Thus, they are bound by the terms of the agreement.

In summary, the court found only that a unilateral mistake was made. Thus, we reverse and remand for such further proceedings as are necessary in light of this decision.

BAKER, C.J., and WEBSTER, J., concur.

Reconsideration denied November 5, 1997.

Review denied at 135 Wn.2d 1011 (1998).

---

[14]*See Graves*, 94 Wn.2d at 300-01.