IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of RUTH E. HUEHNERHOFF, | No. 83504-1-I |
| Deceased. | DIVISION ONE |
| ROBERT HUEHNERHOFF, JOSEPH HUEHNERHOFF, and GARY HUEHNERHOFF, | |
| Appellants/Cross Respondents, | |
| v. | |
| CAROLINE ROBERTS, individually and as Personal Representative of the Estate of Ruth E. Huehnerhoff, | UNPUBLISHED OPINION |
| Respondent/Cross Appellant, | |
| ADAM ROBERTS, JORDAN ROBERTS, and ISAIAH ROBERTS, | |
| Respondents. | |

BOWMAN, J. — Robert Huehnerhoff, Joseph Huehnerhoff, and Gary Huehnerhoff (collectively Huehnerhoffs) petitioned under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, challenging the administration of Ruth Huehnerhoff's estate and the validity of her codicil. The trial court dismissed the petition as a will contest time-barred by RCW 11.24.010. And it determined that the Huehnerhoffs waived their claims by not joining or intervening in another heir's will contest. The trial court also denied Caroline Roberts' request for attorney fees and costs. The Huehnerhoffs appeal and

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

Caroline[1] cross appeals. Because the Huehnerhoffs' petition is not time-barred or waived, we reverse and remand for further proceedings consistent with this opinion. We affirm the trial court's order denying attorney fees and costs.

FACTS

Ruth executed a will in 2006 that divides her estate among several family members. It appoints Ruth's daughter Caroline as personal representative (PR) of the estate, granting her nonintervention powers. The will bequeaths 20 percent of the proceeds from the sale of Ruth's home to her son Edward Huehnerhoff and his wife Claire Huehnerhoff. It instructs the PR to divide 75 percent of the residuary estate equally between all three of Ruth's children—Edward, Robert, and Caroline. The PR is to then divide the remaining 25 percent equally between Ruth's grandchildren—Robert's children, Joseph and Gary, and Caroline's children, Adam Roberts, Isaiah Roberts, and Jordan Roberts.

Ruth died on December 29, 2019. On February 26, 2020, Caroline petitioned in King County Superior Court to admit Ruth's will to probate. At the probate hearing, Caroline told the court her mother also "did a codicil." She handed a document to the court, which she represented as the "original" codicil, purportedly signed by Ruth in 2018. The document limits Edward's gift to $95,000 and states that he "shall NOT be reimbursed based on the selling price of [Ruth's] home." But it does not mention any change to his wife Claire's gift. It also limits the gifts to Robert's children to $5,000 each and leaves an additional

---

[1] For clarity, we refer to most of the parties by their first name throughout the opinion. We mean no disrespect.

$35,000 to each of Caroline's children. Caroline did not list the codicil as a proposed document for probate in her petition.

The court then determined that Caroline's petition was "sufficient to establish the will" and signed her proposed order. The order admitted Ruth's will to probate but said nothing about the codicil. Caroline then distributed the estate under the codicil.

On July 27, 2020, Edward and Claire (collectively Edward) sued Caroline individually and as PR of Ruth's estate. His TEDRA petition and will contest recognized that the court did not admit Ruth's codicil to probate. But he did not seek relief on that basis. Instead, he alleged causes of action for breach of contract,[2] undue influence by Caroline, and removal of Caroline as PR. And he sought a declaratory judgment that the codicil did not affect Claire's gift under the will. Edward served notice of the will contest and a copy of his TEDRA petition on all interested parties to Ruth's estate, including the Huehnerhoffs and Caroline's children.

Around May 2021, discovery revealed that the notary stamp on Ruth's codicil may be a forgery.[3] On May 28, 2021, Edward moved for summary judgment. He asked the court to determine that the codicil is a "fraudulent

---

[2] Edward alleged that the codicil breached a contract between him and Ruth because Ruth promised to reimburse him for providing 20 percent of the purchase price of her home.

[3] The codicil lists the notary as "Linda Y. Wong" and shows a seal with commission no. 197811 and the date of notarization as May 5, 2018. In May 2021, Wong declared that no. 197811 is her notary commission number, but that she spells her name "Lynda YP" Wong and that her notary log shows she notarized her first document in June 2018. She testified that she is "absolutely certain that [she] did not notarize the signatures on the Purported Codicil."

forgery," revoke the prior distributions, and divide the estate according to Ruth's will. On June 16, 2021, Edward and Caroline settled. They conditioned the settlement on the dismissal of Edward's petition "before any other permissible party files a joinder or otherwise intervenes in the action under CR 24 or CR 25." The court dismissed the action with prejudice on June 17, 2021.

About a month later on July 22, 2021, using the same attorney who represented Edward in his TEDRA action, the Huehnerhoffs sued Caroline individually and as PR of Ruth's estate, as well as Caroline's children, Adam, Jordan, and Isaiah. Their TEDRA petition alleged that Caroline "inappropriately distributed Estate assets pursuant to the Forged Codicil which was never admitted to probate" and "breached her duties as PR by . . . distributing the Estate in accordance with the Forged Codicil." They asked the court to reallocate the distributions according to the will, remove Caroline as the PR, and enter a declaratory judgment that the codicil is void as a forgery. The Huehnerhoffs also asked for prejudgment interest, attorney fees, and costs.

Caroline moved to dismiss the petition as a will contest time-barred under RCW 11.24.010. She also argued that the Huehnerhoffs "waived their right to bring the same allegations" as Edward because they did not join or intervene in his 2020 petition. And she asked for attorney fees and costs.

On October 13, 2021, a superior court commissioner pro tem dismissed the Huehnerhoffs' TEDRA petition as "time-barred and waived." The court noted that "more than four months have passed since the beginning of the probate in this matter; . . . [a]nd to the extent there was a lack of Notice to Petitioners by PR

4

Caroline Roberts of the probate proceedings and Caroline's intention to follow the codicil, the Petitioner[ ]s failed to bring action in the required time." The court found that "the distributions made by the PR were in keeping with the codicil filed and presented for admission with the will at the beginning of the case." And the court denied the requests for attorney fees and costs.

The Huehnerhoffs moved to revise the commissioner's ruling. A superior court judge denied their motion and adopted the findings and conclusions of the commissioner.

The Huehnerhoffs appeal and Caroline cross appeals.

ANALYSIS

Statute of Limitations

The Huehnerhoffs contend that the trial court erred by dismissing their TEDRA petition as time-barred under RCW 11.24.010. They argue that their petition amounts to a timely challenge to Caroline's fiduciary duty as PR to administer the estate under a probated testamentary document, not a will contest under chapter 11.24 RCW.

When a party appeals an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's. In re Est. of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008). The application of a statute of limitations is a question of law we review de novo. Bennett v. Computer Task Grp., Inc., 112 Wn. App. 102, 106, 47 P.3d 594 (2002).

5

A. Breach of Fiduciary Duty

A PR owes a fiduciary duty to those beneficially interested in the estate. In re Est. of Boatman, 17 Wn. App. 2d 418, 427, 488 P.3d 845, review denied, 198 Wn.2d 1020, 497 P.3d 378 (2021). So, the PR must use "the utmost good faith and diligence in administering the estate in the best interests of the heirs." Id. This includes using nonintervention powers "to construe and interpret the terms of a probated will, except as the probated will or an order of the court may otherwise direct." RCW 11.68.130(1).[4] And the PR must provide an inventory and appraisement of the estate. See RCW 11.44.015(1). A party may sue a PR for breach of fiduciary duty any time before the court discharges the PR. RCW 11.96A.070(2).

The Huehnerhoffs' petition alleges that Caroline "inappropriately distributed Estate assets pursuant to the Forged Codicil which was never admitted to probate and is clearly a forgery." And they seek to remove Caroline as PR for breaching her duty to "provide an inventory and accounting upon request," to "distribute[ ] the Estate in accordance with the decedent's Will," and to "act in the best interests of the Estate beneficiaries other than herself." These claims are allegations that Caroline breached her fiduciary duty in the administration of Ruth's estate. And the Huehnerhoffs filed their petition on July 22, 2021, before the court discharged Caroline as PR. The trial court erred by dismissing the Huehnerhoffs' breach of fiduciary duty claims as untimely.

[4] We note the legislature codified RCW 11.68.130 in 2021, effective July 25, 2021. LAWS OF 2021, ch. 140, § 4007. Caroline petitioned to admit Ruth's will to probate in February 2020. But RCW 11.68.130 still applies "to all probate estates, regardless of whether the probate action commenced before or after the effective date of this section." LAWS OF 2021, ch. 140, § 4027.

6

B. Will Contest

An interested party may contest a will admitted to probate for

> [i]ssues respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of the last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of the will or a part of it.

RCW 11.24.010. A party must file a will contest within four months of the will's admission or rejection from probate. RCW 11.24.010. The statute of limitations begins to run when the court admits the will to probate. In re Est. of Toth, 138 Wn.2d 650, 653, 981 P.2d 439 (1999). Washington courts strictly enforce the time limits for beginning a will contest. In re Est. of Jepsen, 184 Wn.2d 376, 381, 358 P.3d 403 (2015).

The Huehnerhoffs' petition alleges that Ruth's codicil is a forgery and seeks a declaratory judgment that "the Forged Codicil is void." These allegations clearly challenge the codicil's validity and amount to a will contest. But to determine whether the statute of limitations bars the will contest, we must look to whether the court admitted Ruth's codicil to probate.

A party may petition for the probate of a will to the judge of the court having jurisdiction. RCW 11.20.020(1). "Upon such hearing the court shall make and cause to be entered a formal order, either establishing and probating such will, or refusing to establish and probate the same, and such order shall be conclusive." RCW 11.20.020(1). Here, Caroline petitioned to probate Ruth's will, and the court issued an order admitting Ruth's will to probate. But the court never issued an order admitting Ruth's codicil to probate. As a result, the statute

7

of limitations to contest Ruth's codicil was not triggered, and the Huehnerhoffs' will contest is not time-barred.

Caroline argues that the codicil's omission from the court's order amounts to a scrivener's error. She asserts that she and the pro tem commissioner "had a mutual understanding and made a mutual mistake of not including the term 'codicil' in the written order." And she contends that the mistake "permits a court acting in equity to reform [the] agreement." We disagree.

"In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error." In re Est. of Harford, 86 Wn. App. 259, 263, 936 P.2d 48 (1997). A court may reform such an agreement to correct the parties' error. Id. But the court's probate order is not a contract between Caroline and the pro tem commissioner. It is an order issued by a judicial officer.

We analyze an error in a court order under CR 60(a), the clerical error rule. Id. at 264. "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." CR 60(a). But the court must correct such mistakes "before review is accepted by an appellate court" or pursuant to RAP 7.2(e). Id. Under RAP 7.2(e)(2), a party may seek to "change or modify a decision that is subject to modification by the court that initially made the decision." The trial court must hear the motion first and decide the matter. Id. If the trial court's determination will change a decision

that the appellate court is also reviewing, the moving party must get the appellate court's permission to enter the trial court decision. Id. Here, Caroline did not move under CR 60(a) to correct the probate order as a clerical mistake below. Nor did she seek the relief available under RAP 7.2(e)(2).

The trial court erred by dismissing the Huehnerhoffs' claims challenging the validity of Ruth's codicil as time-barred.

Waiver

The Huehnerhoffs argue the trial court erred by determining that they waived their right to bring a claim under TEDRA because they did not intervene in Edward's lawsuit under CR 24. We agree.

The interpretation of a court rule is a question of law we review de novo. N. Coast Elec. Co. v. Signal Elec., Inc., 193 Wn. App. 566, 571, 373 P.3d 296 (2016). Like statutes, we interpret court rules by looking to the rule's plain language to determine its meaning and the drafter's intent. Id. We give effect to the plain meaning of a court rule by reading it as a whole, considering the text, surrounding context, and related provisions. Dan's Trucking, Inc. v. Kerr Contractors, Inc., 183 Wn. App. 133, 139, 332 P.3d 1154 (2014). If the plain language of the rule is subject to only one reasonable interpretation, then our inquiry is at an end. Walker v. Orkinh, LLC, 10 Wn. App. 2d 565, 569, 448 P.3d 815 (2019).

Under CR 24(a) and (b), a party may intervene in a lawsuit (1) as a matter of right or (2) by permission of the court. Pub. Util. Dist. No. 1 of Okanogan County v. State, 182 Wn.2d 519, 531, 342 P.3d 308 (2015). A party has a right

to intervene when they claim an interest in the disposition of an action that would adversely affect their ability to protect their interest unless the existing parties adequately represent that interest. CR 24(a)(2). And a court may permit a party to intervene "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." CR 24(b)(2).

Citing Estate of Bunch v. McGraw Residential Center, 174 Wn.2d 425, 275 P.3d 1119 (2012), and Hindman v. Great Western Coal Development & Mining Co., 47 Wash. 382, 92 P. 139 (1907), Caroline argues that "[u]nder CR 24, where a party has an interest in an existing action but is not a party to that action, such party must timely intervene in order to protect their respective interest." Neither case supports her argument. In Bunch, our Supreme Court interpreted CR 19(a) to allow an adoptive mother to join, or "intervene," as a "necessary party" to a wrongful death action involving her child. 174 Wn.2d at 431. And in Hindman, our Supreme Court held that a creditor did not have a statutory right to intervene in a mortgage foreclosure action because it did not have a direct interest in the outcome of the litigation. 47 Wash. at 384-85. Neither case holds that the failure to intervene under CR 24 amounts to a waiver of the right to file an independent claim.

Caroline also argues that the Huehnerhoffs' "inaction despite adequate notice, their appearance in the initial hearing of the proceedings, and warnings of their inaction in the TEDRA Summons, constitute a clear waiver."

Whether a party waives the right to a legal claim is a mixed question of law and fact. Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 440-41, 191

P.3d 879 (2008). When the parties do not dispute the facts, we review waiver de novo as a question of law. Id. at 441; see Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005) (we review the grant of equitable relief de novo as a question of law).

Caroline cites several cases in support of her waiver claim. But none of the cases apply to waiver of the right to bring a cause of action. Pasco Police Officers' Ass'n v. City of Pasco, 132 Wn.2d 450, 461-64, 938 P.2d 827 (1997), discussed whether certain proposals made in contract negotiations amount to waivers of collective bargaining rights under the Public Employees' Collective Bargaining Act, chapter 41.56 RCW. Raymond v. Fleming, 24 Wn. App. 112, 114-15, 600 P.2d 614 (1979), determined that an attorney's unnecessary delay waived a client's right to argue the affirmative defense of insufficient service of process. In Haywood v. Aranda, 97 Wn. App. 741, 744-45, 987 P.2d 121 (1999), aff'd, 143 Wn.2d 231, 19 P.3d 406 (2001), Division Two determined that a party waived an objection to a defendant's failure to file proof of service of his demand for a trial by waiting to object until after the adverse verdict. And Dullanty v. Comstock Development Corp., 25 Wn. App. 168, 173, 605 P.2d 802 (1980), held that the inaction of two contracting parties waived the right to enforce a contract's "time [is] of the essence" clause. We find none of these cases persuasive, as

11

they each involve the waiver of discrete contractual or procedural rights, not the right to sue.[5]

The trial court erred by concluding the Huehnerhoffs waived their claims under TEDRA.[6]

Attorney Fees and Costs

Both parties ask for attorney fees and costs on appeal. Under RAP 18.1(a), a party may request attorney fees on appeal if "applicable law" grants them the right to recover the fees. The parties cite RCW 11.96A.150 in support of their requests.[7] Under that statute, a court has discretion to award fees and other costs to any party in an estate dispute proceeding governed by Title 11 RCW. The court may award any amount it "determines to be equitable." RCW 11.96A.150(1). "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which

---

[5] Caroline argued below that the doctrine of laches applied, but she abandoned the argument on appeal. Laches is the equitable doctrine that relates to waiver of the right to sue. Somsak v. Criton Techs./Heath Tecna, Inc., 113 Wn. App. 84, 93-94, 52 P.3d 43 (2002). Laches is an implied waiver of claims arising from knowledge of existing conditions and failing to act. Id. at 93. The doctrine of laches will bar a claim when the party asserting it proves that (1) the plaintiff knew the facts constituting an action, (2) they unreasonably delayed commencing that action, and (3) the delay caused material prejudice to the defendant. Id. In any event, laches offers Caroline no relief because the Huehnerhoffs brought their claims within the statute of limitations. See Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 143 Wn. App. 345, 362, 177 P.3d 755 (2008) ("laches is an extraordinary remedy that should not, under ordinary circumstances, be employed to bar an action short of the applicable statute of limitations").

[6] The Huehnerhoffs also ask us to grant their TEDRA petition on its merits because "Caroline failed to raise a genuine issue of material fact that the notarization was a fraud at the initial hearing." But the trial court did not reach this issue; it dismissed their petition on procedural grounds as time-barred and waived. We decline to reach the merits of this claim. See RAP 2.4(a).

[7] Caroline also cites RAP 14.2.

factors may but need not include whether the litigation benefits the estate or trust involved." Id.

Because the parties have not yet litigated the merits of the Huehnerhoffs' petition, we decline to award either party attorney fees and costs on appeal and reserve the issue for the trial court. See RAP 18.1(i).

Cross Appeal

Caroline argues on cross appeal that the trial court erred when it denied her request for attorney fees and costs below. We disagree.

Caroline also relied on RCW 11.96A.150 when requesting attorney fees and costs below. We review a trial court's decision whether to award attorney fees under TEDRA for an abuse of discretion. In re Est. of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Id. at 172.

Caroline argued below that the Huehnerhoffs' actions entitled her to attorney fees and costs because their "meritless claims have resulted in [her] incurring significant attorney fees and costs," and their lawyer "has not acted in a manner conducive to the Rules of Professional Conduct." But the merits of the Huehnerhoffs' claims were not before the trial court. The court recognized that "what we're dealing with here is, it seems to me, is a will contest or a codicil contest that has been brought too late. Not one that may have no merit." And Caroline offered no evidence that the Huehnerhoffs' lawyer acted contrary to the

RPCs. The trial court did not abuse its discretion in refusing to award her attorney fees.

Because the Huehnerhoffs' claims in their TEDRA petition were neither time-barred nor waived, we reverse and remand for further proceedings consistent with this opinion. We affirm the trial court's order denying Caroline's request for attorney fees and costs and deny both parties' requests for fees on appeal.

Brennan, J.

WE CONCUR:

Birk, J.

Coburn, J.